UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BRIAN SWONTEK,

                        Petitioner,                **DECISION AND ORDER**

                -vs-                                    02-CV-6528 CJS

JAMES BERBARY, Superintendent,
Collins Correctional Facility,
                      Respondent.

_____

## INTRODUCTION

Brian Swontek ("Swontek") filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Erie County Court entered on September 8, 1997 on two counts of second degree forgery, one count of first degree scheme to defraud and one count of second degree bail jumping. For the reasons set forth below, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Under Erie County Indictment No. 95-3139, Swontek was charged with one count of grand larceny in the third degree (N.Y. Penal Law § 155.35), three counts of forgery in the second degree (N.Y. Penal Law § 170.10(1)), and one count of committing a scheme to defraud in the first degree (N.Y. Penal Law § 190.65(1)(b)). These charges stemmed from Swontek's use of a credit card belonging to Barry Karr to purchase a snowmobile on November 8, 1995, and to open lines of credit at several stores in Erie County under Karr's name.

Additionally, Swontek waived indictment by a grand jury and was charged by superior court information filed in Erie County (No. 96-1287) with one count of second degree forgery based upon Swontek's use of a credit card belonging to Gary Behr to purchase items at Jim and Chuck's Boot Shop on September 1, 1995.

On June 13, 1996, represented by retained counsel Robert Lee, Esq. ("Lee"), Swontek appeared in Erie County Court (Tills, J.) and entered a plea of guilty to one count of forgery in the second degree and one count of committing a scheme to defraud in the second degree in full satisfaction of Indictment No. 95-3139. At that time, Swontek also pleaded guilty to the count of second degree forgery set forth in superior court information No. 96-1287. As a condition of the plea, Swontek waived his right to appeal.

Judge Tills advised Swontek that he "ha[d] an inclination to grant [Swontek] two and a half to five [years]." 6/13/96 Transcript at 5. Judge Tills further advised Swontek of the conditions on which the sentencing recommendation was contingent,[1] and Swontek

---

[1] Judge Tills stated

> Now, my inclination [to impose a sentence of 2½ to 5 years] is based upon the background information that I have already just indicated in this court based upon the information given by your attorney to me [*i.e.*, the fact that Swontek was facing jail time on other, unrelated charges and that his recently-widowed mother was in "dire need" of assistance from him] and it's based upon [the] theory that there is not anyone else out there that's going to come forward with any additional charges or any additional allegations against you. And that all that inclination is based upon that [*sic*] you will obviously not be involved with any kind of a problem between now and the time you are sentenced[,] and my inclination also is based upon that [*sic*] you have provided me with, and your attorney and, [*sic*] with all the information in regards to your background.
>
> And let me assure you, sir, that the plea that the, the amount of the, what I have, [*sic*] my inclination to give you as sentence will - - upon a violation[,] the inclination is gone. Okay. And your ability to withdraw your plea is gone. So today when you stand before me you [']roll the dice['] to say[,] [']I'm not going to get in any more trouble and I'm not going to do anything more, that's it.['] And that you've been honest with your attorney, that there's nobody else out there you flimflammed in any way, okay.

June 13, 1996 Transcript at 5-6.

indicated that he understood. *Id.* at 6-7. Swontek admitted that he was a predicate felon and acknowledged that, as such, he faced the possibility of having his current sentences run consecutively to any sentences imposed in other jurisdictions. *Id.* at 13.[2] Judge Tills set the sentencing hearing for August 19, 1996. Swontek's live-in girlfriend, Kimberly Lickliter ("Lickliter"), and Ronald Brania ("Brania") posted $8,000 bail for Swontek who was released pending a bail hearing on July 10, 1996.

Swontek did not appear for his bail hearing or for sentencing. On September 4, 1996, the prosecution moved for an order to have the $8,000 bail forfeited to the County based upon Swontek's failure to appear. Defense counsel Lee informed the court that he had a contract with Lickliter, Swontek's girlfriend, wherein he would be paid his attorney's fee out of the bail money posted by Lickliter.[3] Judge Tills observed that Lee's only likely remedy was to make an application to the County to have a portion of the forfeited bail money remitted to him. *See* 9/4/96 Transcript at 2-4.

In June 1997, Swontek was apprehended in South Carolina in possession of $42,000 of stolen property and extradited to New York. When Swontek appeared before Judge Tills on June 16, 1997, defense counsel Lee, in support of his motion for attorney's fees, argued that a surety who posts bail that has been forfeited has a statutory right to

---

[2] "The Court:   I have not given you an inclination as to whether I will run [the sentences] concurrent. My inclination [is] to run the ones you're just pleading to concurrent but in no way have I given you a commitment that I would run it concurrent with any other sentence with any other court in any other jurisdiction.

The Defendant: Yes."

June 13, 1996 Transcript at 13.

[3] Lee and Lickliter signed an agreement whereby Lickliter agreed to pay Lee $2,000 for his legal services out of the $5,000 in bail money which she posted on Swontek's behalf. Brania had posted the remaining $3,000 of bail money but was not involved in the agreement between Lee and Lickliter.

move for remission of that bail within one year, so long as the surety produces the defendant for the court. Judge Tills indicated that it was "very likely" that he would not grant the motion but reserved decision. Proceedings were adjourned to allow the prosecution to file a new indictment charging Swontek with bail jumping.

On July 28, 1997, Swontek appeared in court and waived indictment by a grand jury and was charged by superior court information No. 97-1630 with second degree bail jumping (N.Y. Penal Law § 215.56). Swontek then entered a guilty plea to that charge. He acknowledged that he was satisfied with Lee's representation and that he was voluntarily pleading guilty to the crime of bail jumping. Swontek also pleaded guilty to a third charge of second degree forgery, contained in Indictment No. 96-1501, and arising from his impersonation of Jason Blumberg on February 5, 1996, in order to obtain a New York State driver's license. The court asked defense counsel Lee to prepare a pre-sentencing memorandum. Sentencing was set for September 8, 1997.

In the interim, Lee left private practice and accepted a position with the New York State Attorney General's office. Since he could no longer continue his representation of Swontek, Lee arranged to have defense attorney Robert Johnson, Esq. ("Johnson") represent Swontek for the remainder of his criminal proceedings. By letter dated August 20, 1997, Lee notified Swontek's wife, Erin Swontek, of these developments.

The sentencing hearing was held before Judge Tills on September 8, 1997. The judge imposed the following sentences: On Indictment No. 95-3139, Swontek was sentenced to 2 to 4 years on second degree forgery count and 1½ to 3 years on the count of first degree scheme to defraud, both sentences to run concurrently with each other. On his plea to forgery in the second degree, as contained in Indictment No. 96-1501, Swontek

was sentenced to 2 to 4 years. On superior court information No. 96-1287, Swontek also pled guilty to a second degree forgery count, and he received a sentence 2 to 4 years. Finally, with regard to superior court information No. 97-1630, Swontek pled guilty to second degree bail jumping and received a 2 to 4 year term of imprisonment. Apart from the concurrent sentences imposed with respect to second degree forgery and first degree scheme to defraud on Indictment No. 95-3139, all of the terms of imprisonment were ordered to run consecutively, resulting in an aggregate sentence of 8 to 16 years imprisonment. Meanwhile, Swontek also had been sentenced on charges pending in Monroe County Court to a term of 3½ to 7 years to run consecutively with the Erie County Court sentences. In total, therefore, Swontek faced an aggregate term of imprisonment of 11½ to 23 years. However, pursuant to New York Penal Law § 70.30(e), the aggregate sentence was reduced to 10 to 20 years.

On or about July 12, 2001, Swontek submitted a *pro se* motion to vacate the Erie County judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 in which he raised numerous issues concerning trial counsel's performance and the validity of the sentences he received. In a lengthy decision and order entered September 18, 2001, Erie County Court Judge Russell P. Buscaglia denied the C.P.L. § 440.10 motion in its entirety. The Appellate Division, Fourth Department, of New York State Supreme Court denied leave to appeal.

Represented by new counsel, Norman P. Effman, Esq., Swontek then appealed his conviction to the Fourth Department raising the following arguments: (1) the plea allocution did not have an adequate factual recitation by the defendant; (2) trial counsel acted under a conflict of interest due to his fee arrangement with the individuals who posted bail for the

defendant; and (3) the sentence imposed was excessive. Swontek submitted a *pro se* supplemental brief in which he raised the following points: (1) trial counsel was ineffective because his fee arrangement created a conflict of interest; (2) the trial court "failed to arraign or to acquire jurisdiction of appellant pursuant to CPL Sec. 180.10 and 210.10 which warrant[s] a dismissal of indictments"; (3) the trial court erred in sentencing him to a greater sentence than promised; and (4) the sentence was "unconstitutionally harsh and excessive under both New York State and Federal Constitutions." The Appellate Division unanimously affirmed Swontek's conviction in a memorandum decision and order entered December 21, 2001. *People v. Swontek*, 289 A.D.2d 989 (N.Y. App. Div. Dept. 2001). The New York Court of Appeals denied leave to appeal on March 25, 2002. *People v. Swontek*, 97 N.Y.2d 762 (2002).

This habeas petition was filed on or about October 12, 2002. In it, Swontek asserts that he is entitled to "specific performance" of the court's June 13, 1996 "sentence promise" and that the court erroneously enhanced his final sentence based on his absconding and new arrests. Swontek also claims that he did not receive the effective assistance of trial counsel in the pre-sentencing phase of the proceedings due to counsel's conflict of interest, and that the trial court failed to hold a hearing regarding the alleged conflict of interest. Finally, Swontek argues that he did not receive the effective assistance of counsel from his new, substituted counsel at sentencing, Robert Johnson, Esq. *See* Petition (Docket #1); *see also* Petitioner's Memorandum of Law (Docket #3).

## DISCUSSION

**Exhaustion and Procedural Default**

A petitioner must exhaust all available State remedies either on direct appeal or through a collateral attack of his conviction before he may seek a writ of habeas corpus in Federal court. 28 U.S.C. § 2254(b)(1); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995). The exhaustion of State remedies requirement means that the petitioner must have presented his constitutional claim to the highest state court from which a decision can be obtained. *See Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (citing *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991)). A claim is properly exhausted when the State court is fairly apprised of the claim's Federal nature and of the factual and legal premises underlying the claim. *Grey*, 933 F.2d at 119-20.

In Point One of its Memorandum of Law, respondent asserts that Swontek's claims relating to the enhancement of his sentence and his entitlement to "specific performance" (collectively, "the sentencing claims") are unexhausted. Later in the argument on this point, however, respondent states that Swontek's sentencing claims are procedurally defaulted because the Appellate Division rejected them on the basis that Swontek's *pro se* supplemental brief raising the claims was not properly before the court. *People v. Swontek*, 289 A.D.2d at 989 ("The contentions of defendant in his *pro se* supplemental brief are not properly before us (*see*, 22 NYCRR 1000.3[f] )"). The Appellate Division went on to hold that "[i]n any event, there is no merit to any of those contentions." *Id.*

The Court finds that the sentencing claims clearly are exhausted, since Swontek raised them on direct appeal and also included them in his application seeking leave to

appeal to the New York Court of Appeals. The question is whether they are procedurally defaulted due to the Appellate Division's reliance upon New York Court Rule 1000.3(f) rule in dismissing them.[4] However, rather than addressing this issue, the Court will dispose of the sentencing claims on the merits since the underlying issues are easily resolved. *See, e.g.*, *Dunham v. Travis*, 313 F.3d 724, 729-30 (2d Cir. 2002) (stating that Federal habeas court may "hurdl[e] the procedural questions to reach the merits of a habeas petition" where the underlying issue is "easily resolvable against the habeas petitioner, whereas the procedural-bar issue involve[s] complicated issues of state law" (internal quotation marks and citation omitted)).

**Standard of Review**

In this case, as in all habeas petitions brought after the enactment of the Antiterrorism and Effective Death Penalty Act on April 24, 1996, a Federal court cannot grant habeas relief where there was an adjudication on the merits in a state court proceeding unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also Williams v. Taylor*, 529 U.S. 362 (2000).

---

[4] New York Court Rule 1000.3(f) which provides in relevant part that

> [a]n appellant in a criminal appeal who is represented by assigned counsel may file 10 copies of a *pro se* supplemental brief, with proof of service of one copy on assigned counsel and the People, no later than 45 days after the date on which assigned counsel mails to the appellant the brief prepared, filed and served by assigned counsel. . . .

N.Y. Ct. Rules § 1000.3(f) (McKinney's 2004). A review of the record indicates that counsel's appellate brief was served on June 19, 2001, and Swontek's affidavit of service for his *pro se* supplemental brief was submitted on July 12, 2001. Thus, it appears as if Swontek complied with the time limitations set forth in Rule § 1000.3(f). It is not clear to the Court why the Appellate Division cited this court rule as its basis for holding that Swontek's claims were not properly before it.

**Merits of the Petition**

A.   **Specific Performance**

Swontek argues he never was advised that his sentences could be enhanced to run consecutively if he was arrested or failed to appear as required in court. *See* Petitioner's Memorandum of Law at 5 (Docket #3). Swontek contends that the court's "failure to relate [those] specific conditions" to Swontek was a "breach" of the alleged sentencing promise. *Id.* First of all, there was no sentencing promise made by the court. Rather, the judge informed Swontek that he had an "inclination" to impose concurrent sentences of 2½ to 5 years on the two forgery convictions provided that Swontek did not get involved in any more "problems" between the plea hearing and sentencing. Consequently, by imposing consecutive sentences on the forgery convictions, the court did not renege on any overt or implied promise to Swontek. Secondly, Swontek cannot seriously argue that he did not understand "problems" to include arrests or willful failures to appear in court. In short, these claims are patently without any merit and must be dismissed.

B.   **Ineffective Assistance of Counsel**

In order to succeed on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas petitioner must satisfy a two-part test. First, he must show that his attorney's performance "fell below an objective standard of reasonableness," *Id.* at 688, and second, he must show that there is a "reasonable probability" that but for counsel's error, the outcome would have been different. *Id.* at 694. "[T]here is no reason for a court

deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

### 1. Conflict of Interest

Swontek alleges that he was deprived the effective assistance of counsel guaranteed him under the Sixth Amendment because his defense attorney operated under both a potential and actual conflict of interest. The source of the conflict of interest is trial counsel's fee arrangement with the individuals who posted bail for Swontek. Swontek alleges that it amounted to the type of contingency fee agreement prohibited in criminal matters. *See*, *e.g.*, *People v. Winkler*, 71 N.Y.2d 592, 595 (1988) ("'Public policy properly condemns contingent fee arrangements in criminal cases[.]'") (quoting Code of Professional Responsibility EC 2-20). In New York, Disciplinary Rule 2-106(c) of the Ethical Code "makes it a breach of legal ethics for a lawyer to 'enter into an arrangement for, charge, or collect a contingent fee for representing a defendant in a criminal case[.]'" *Id.* (quoting Code of Professional Responsibility DR 2-106(c) & citing ABA Standards for Criminal Justice, Defense Function § 3.3(e)).

Two friends of Swontek's, Kimberly Lickliter and Martin Brania, posted Swontek's $8,000 bail; Lickliter posted $5,000 and Brania posted $3,000. On March 22, 1996, defense counsel and Lickliter signed an agreement which provided in full as follows:

> Robert J. Lee, as attorney for Brian Swontek, agrees to hold $5,000 Bail Receipt #09877 as collateral for legal services. Two thousand dollars ($2,000) of this receipt will be kept as legal fees at the conclusion of the case or before, and $3,000 will be returned to Kim Lickliter. This $3,000 can be returned to either Kim Lickliter or Brian Swontek's mother, Lucy Swontek.

*See* Agreement attached as Exhibit L to Petitioner's Affidavit in Support of Motion to Vacate Judgment, included in Respondent's Appendix (Docket # 8), Exhibit C. The contract was signed by Lee, Lickliter, and Lucy Swontek.[5]

A contingent fee arrangement exists when the attorney's compensation is dependent, in whole or in part, upon the amount recovered in the lawsuit at issue. *See*, *e.g.*, *City of Burlington v. Dague*, 505 U.S. 557, 560-61 (1992). Here, however, the agreement entered into by defense counsel Lee and Lickliter was not a contingent fee arrangement, since defense counsel's compensation was not dependent upon Swontek's recovery of any amount of money. Although it could be said that defense counsel's fee was "contingent" upon Lickliter being refunded her portion of the bail proceeds, this was an event over which counsel had no control. Only Swontek, by keeping his commitment to appear in court as ordered, had the ability to ensure that the bail money was remitted to Lickliter. This, of course, he did not do.

Even if the agreement here at issue could be construed as a contingency fee arrangement, "[l]egal representation in a criminal proceeding pursuant to a contingent fee retainer, while unquestionably unethical, does not constitute *per se* ineffective assistance of counsel." *People v. Winkler*, 71 N.Y.2d at 593. In the instant case, Swontek's allegations do not come close to establishing ineffectiveness on the part of defense counsel Lee. Even without being guaranteed a fee for his services, Lee secured a very favorable plea agreement for Swontek concerning the four prosecutions. Furthermore, Swontek's

---

[5] Lickliter and Brania never received their money back. The posted bail money apparently escheated to the County as a result of Swontek's failure to make his required court appearances.

allegations that Lee angrily remonstrated him after the bail forfeiture incident do not establish a conflict of interest on the part of defense counsel. To the contrary, Lee continued to represent Swontek after the bail money was forfeited, obtaining plea deals with respect to the bail jumping charge and the new forgery charge. In addition, Lee prepared a memorandum seeking leniency in sentencing on Swontek's behalf. Finally, once Lee obtained a new position at the Attorney General's office, he secured the services of another attorney to represent Swontek at his sentencing hearing. On the facts before the Court, there is no evidence of a conflict of interest or ineffective representation on the part of defense counsel.

### 2. Deficient Representation at Sentencing

Swontek contends that Johnson, his new counsel, did not provide effective representation at the sentencing hearing because he (1) failed to request an adjournment to familiarize himself with Swontek's file; (2) failed to move to withdraw the plea or ask for specific performance of the court's alleged June 1996 sentence promise; and (3) failed to object to the imposition of consecutive sentences.

Swontek had no colorable basis upon which defense counsel could have moved to withdraw the plea, and he was not entitled to specific performance of any alleged sentence promise. First of all, the court did not make a sentence commitment to Swontek in June 1996. Rather, the judge stated that his "inclination" was to sentence to Swontek to concurrent terms of 2½ to 5 years on the forgery convictions. Swontek was advised, and stated that he understood, that if there was "any kind of problem between now and sentencing, involving more charges or allegations," the court's "inclination" regarding Swontek's sentence would disappear. The judge informed Swontek that his "inclination"

was to make the sentences run concurrently, but he made no commitment on that issue. *See* June 13, 1996 Transcript at 13. Furthermore, Swontek acknowledged that he would lose his ability to withdraw his plea should he be "involved with any kind of a problem" prior to his sentencing date. *See id.* at 5-6. Swontek, however, fled the State prior to sentencing and was found in South Carolina in possession of $42,000 of stolen property. This certainly qualifies as being involved in a "problem" and thereby violated the explicitly stated conditions on the judge's recommendation. Under these circumstances, a motion to withdraw the plea on the basis that the court violated its alleged sentence promise to Swontek would have been disingenuous at best.

Although defense counsel could have objected to the imposition of consecutive sentences, it would have been futile. The court was under no obligation to impose concurrent sentences since the bail jumping, forgery and scheme to defraud convictions all arose out of separate and distinct criminal acts. *See* N.Y. PENAL LAW § 70.25(2) (McKinney's 2004) (providing that concurrent sentences must be imposed "[w]hen more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other."). The court was well within its discretion to make the sentences run consecutively, given the nature of the offenses underlying the convictions and Swontek's failure to comply with the court's conditions.

Finally, Swontek contends that counsel's failure to request an adjournment amounts to ineffective assistance of counsel. However, he has failed to explain how an adjournment would have improved counsel's ability to represent him at sentencing. As respondent

notes, a pre-sentence memorandum already had been prepared and submitted to the court by Swontek's former defense counsel. By this point in the proceedings, the judge was quite familiar with Swontek's case and had formed his opinions as to the proper sentence in light of Swontek's criminal history and status as a second felony offender. An adjournment would not have resulted in a more favorable outcome for Swontek.

None of Swontek's allegations, taken singly or together, show deficient representation on the part of the attorney who represented him at sentencing. In sum, the state court's rejection of Swontek's claims of attorney ineffectiveness was neither contrary to, nor an unreasonable application of *Strickland*, 466 U.S. 668.

## CONCLUSION

For the reasons stated above, Brian Swontek's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Swontek has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. 28 U.S.C. § 2253. Further, the Court certifies that any appeal from this order would not be taken in good faith. *See* 28 U.S.C. § 1915(a); *Coppedge v. United States,* 369 U.S. 438, 444 (1962).

IT IS SO ORDERED,

Dated: October 19, 2005
       Rochester, New York       ENTER.

       /s/ Charles J. Siragusa
       CHARLES J. SIRAGUSA
       United States District Judge